# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FAYE I.,[1] | ) | NO. EDCV 17-2014-KS |
|       Plaintiff, | ) | |
|   v. | ) | MEMORANDUM OPINION AND ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) | |
|       Defendant. | ) | |

## INTRODUCTION

Faye I. ("Plaintiff") filed a Complaint on October 3, 2017, seeking review of the denial of her application for a period of disability and disability insurance benefits ("DIB"). On July 12, 2018, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 10, 21, 22.) On July 5, 2018, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 20.) Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at 36.) The Commissioner

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*See id.* at 37.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On September 24, 2013, Plaintiff, who was born on June 18, 1959, filed an application for a period of disability and DIB.[2] (*See* Administrative Record ("AR") 250.) Plaintiff alleged disability commencing January 1, 2009 due to: anxiety; depression; chronic pain syndrome; fibromyalgia; carpal tunnel; hypertension; degenerative disc disease; lower back pain; restless leg syndrome; and sleep apnea. (AR 294.) Plaintiff subsequently moved to amend her alleged onset date to November 5, 2011. (AR 24.) Plaintiff previously worked as an office assistant/administrative clerk (DOT 219.362-010), filing clerk (DOT 206.387-034), and stockroom clerk (DOT 222.387-058). (AR 37-38, 296.) After the Commissioner denied Plaintiff's applications initially (AR 114) and on reconsideration (AR 128), Plaintiff requested a hearing (AR 156-57). Administrative Law Judge Helen Hesse ("ALJ") held a hearing on April 12, 2016. (AR 45.) Plaintiff, who was represented by counsel, testified before the ALJ as did vocational expert ("VE") Alan Boroskin and medical expert Dr. John R. Morse. (AR 45-74.) On May 2, 2016, the ALJ issued an unfavorable decision, denying Plaintiff's application. (*Id.* 24-39.) On August 1, 2017, the Appeals Council denied Plaintiff's request for review. (*Id.* 1-6.)

\\
\\
\\
\\

---

[2] Plaintiff was 49 years old on the alleged onset date and thus met the agency's definition of a younger individual. *See* 20 C.F.R. § 404.1563(c). Plaintiff has since changed age categories twice and is now a person of advanced age. *See id.* § 404.1563(e).

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. (AR 26.) The ALJ further found that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of November 5, 2011. (AR 26.) The ALJ determined that Plaintiff had the following severe impairments: "multilevel degenerative disc disease of the cervical spine with onset 2/8/2012" and "mild osteoarthritis of the left knee with onset 12/2013." (AR 27.) In reaching that determination, the ALJ found that Plaintiff's diagnosis of fibromyalgia was not a medically determinable impairment and her mood disorder was nonsevere. (AR 27-29.) The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (AR 29.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "light work" as follows:

> [S]it 6 hours out of an 8-hour day; stand or walk 6 hours out of an 8-hour day with normal workday breaks; occasionally lift 20 pounds, frequently lift 10 pounds; occasionally climb, bend, balance, stoop, kneel, crouch, or crawl; precluded from unprotected heights, dangerous, or fast moving machinery; and with both upper extremities can perform frequent but not constant gross and fine manipulation.

(AR 29.)

The ALJ found that Plaintiff was able to perform her past relevant work as an office assistant/administrative clerk (DOT 219.362-010), filing clerk (DOT 206.387-034), and stockroom clerk (DOT 222.387-058). (AR 37.) Accordingly, the ALJ determined that

Plaintiff had not been under a disability, as defined in the Social Security Act, from the amended alleged onset date through the date of the ALJ's decision. (AR 38.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not

reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

The sole issue in dispute is whether the ALJ erred at step two of the sequential analysis by failing to find that Plaintiff's mental impairments were severe. (Joint Stip. at 16.) After careful review of the ALJ's decision and the medical record, the Court finds no error.

**I.     ALJ's Decision at Step Two**

The ALJ acknowledged at step two of the sequential analysis that Plaintiff was treated for depression and placed on psychotropic medications. (AR 27.) However, the ALJ observed that "objective findings on mental status were almost entirely normal" and concluded that "there is little information to show [Plaintiff's] depression had more than a minimal effect on her ability to perform basic mental work activities." (AR 27.)

The ALJ explained that she gave "little weight" to the opinions of Plaintiff's two treating psychiatrists, M.L. Valdes, M.D., and Elaine Dresbach, M.D., both of whom had assessed Plaintiff with marked limitations in several areas of mental functioning, because their opinions were (1) inconsistent with the objective medical evidence and the record as a whole and (2) not supported by their respective treatment notes. (AR 30, 31.) The ALJ assigned "some weight" to the conflicting opinion of the examining psychiatrist, Gregory Nicholson, M.D., because it was consistent with the substantial evidence of record, which showed that Plaintiff's mental impairment(s) did not cause more than mild limitations in mental functioning. (AR 34.)

5

Additionally, using section 12.00C of the Listing of Impairments as a framework, the ALJ made the following findings regarding the extent to which Plaintiff's depression (1) limited Plaintiff's activities of daily living, social functioning, and concentration, persistence, and pace and (2) caused episodes of decompensation. (AR 28.) First, with respect to Plaintiff's activities of daily living, the ALJ found that Plaintiff's difficulties were due to Plaintiff's physical pain rather – not a mental impairment. (AR 28.) Second, with respect to social functioning, the ALJ found that Plaintiff had mild limitation but retained the capacity to interact appropriately and communicate with others, noting that Plaintiff "went walking with a friend, attended gatherings, and socialized on the telephone or computer." (AR 28.) The ALJ also noted that Plaintiff was able to go to the grocery store, church, and the doctor's office and was able to function in these public places. (AR 28.) Third, with respect to the areas of concentration, persistence, or pace, the ALJ found that Plaintiff had only mild limitation. (AR 28.) The ALJ explained that although the record indicated that Plaintiff reported difficulty completing tasks and following instructions, she also reported "being able to use the computer, watch television, shop for groceries and personal needs in stores and by computer, pay bills, handle a savings account, and use a checkbook/money orders." (AR 28.) Fourth and finally, with respect to episodes of decompensation, the ALJ stated that Plaintiff had experienced no episodes of decompensation of extended duration and, according to the medical records, had never been hospitalized for any mental impairment. (AR 28.)

Having determined that Plaintiff did not have a severe mental impairment at step two, the ALJ included no limitations arising from Plaintiff's depression in her assessment of Plaintiff's RFC. (*See generally* AR 29) (assessing only physical limitations).

\\
\\
\\
\\

## II. Applicable Law

At step two of the sequential analysis, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe." The Commissioner defines a severe impairment as "[a]n impairment or combination of impairments . . . [that] significantly limit[s] your physical or mental ability to do basic work activities," including, *inter alia*: "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1522. "An impairment or combination of impairments may be found not severe *only if* the evidence establishes a *slight* abnormality that has no more than a *minimal* effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis added) (citations and internal quotation marks omitted). If "an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Id.* at 687 (citation and internal quotation marks omitted). "Step two, then, is a *de minimis* screening device [used] to dispose of groundless claims, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when [her] conclusion is clearly established by medical evidence." *Id.* (emphasis added) (citations and internal quotation marks omitted).

Additionally, at any step in the sequential analysis in which the ALJ weighs conflicting medical opinions, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them"). Generally, the opinion of a treating source is entitled to greater weight than the opinion of doctors who do not treat the claimant because treating

sources are "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See Garrison*, 759 F.3d at 1012; *see also* 20 C.F.R. §§ 404.1527(c)(2) (governing claims filed before March 27, 2017), 404.1520c(c) (governing claims filed on or after March 27, 2017). Thus, to reject an uncontradicted opinion of a treating or examining physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). Alternatively, "[i]f a treating or examining doctor's opinion *is* contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675 (emphasis added).

Notably, an ALJ may properly reject a treating physician's conclusions that do not "mesh" with the treating physician's objective data or history, *see, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001), and the ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("discrepancy" between treating physician's assessment and clinical notes is a clear and convincing reason for not relying on the doctor's opinion).

\\
\\
\\
\\
\\
\\
\\
\\

### III. Analysis

#### A. Medical Evidence

##### 1. Treating Psychiatrists

As stated above, in finding Plaintiff's mental impairment(s) non-severe, the ALJ rejected the opinions of both of Plaintiff's treating psychiatrists. One of those psychiatrists, M.L. Valdes, M.D., completed a check-the-box impairment questionnaire on February 3, 2012, in which she stated the following: she began treating Plaintiff on July 15, 2010 on a monthly basis and, prior to completing the questionnaire, had most recently treated Plaintiff on February 3, 2012 (AR 382); Plaintiff's diagnosis was major depression, severe recurrent (AR 382); Plaintiff's GAF score at the time Dr. Valdes completed the questionnaire was 60 and her lowest GAF score over the past year was 55 (AR 382);[3] Plaintiff's prognosis was guarded (AR 382); Plaintiff exhibited poor memory, mood disturbance, emotional lability, anhedonia or pervasive loss of interests, psychomotor agitation or retardation, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, and, *inter alia*, persistent anxiety (AR 383); Plaintiff has not required hospitalization or emergency room treatment for her symptoms (AR 384); and Plaintiff is markedly limited in her ability to, *inter alia*, remember work-like procedures, understand and remember one or two step instructions, perform activities within a schedule, maintain regular attendance, work in coordination with or proximity with others, complete a normal workweek without interruptions from symptoms and perform at a consistent pace, interact appropriately with the general public, accept instructions and respond appropriately to

---

[3] A GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning, such as few friends and conflicts with peers or co-workers. *See* Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 34 (revised 4th ed. 2000). The Commissioner has stated that the GAF scale "does not have a direct correlation to the severity requirements in [the] mental disorders listings," 65 Fed. Reg. 50764, 50764-65 (Aug. 21, 2000), and the most recent edition of the DSM "dropped" the GAF scale. Diagnostic And Statistical Manual Of Mental Disorders 16 (5th ed. 2012).

9

criticism from supervisors, get along with co-workers or peers, respond appropriately to changes in the work setting, and, *inter alia*, travel to unfamiliar places or use public transportation (AR 385-87). When asked to explain her assessment of these limitations, Dr. Valdes stated that Plaintiff was "unable to concentrate." (AR 387.) When asked to identify and assess the severity of any additional limitations, Dr. Valdes wrote "7/10." (AR 387.) Dr. Valdes stated that Plaintiff was "incapable" of tolerating even a low level of work stress due to potential decompensation. (AR 388.) She further opined that Plaintiff was likely to be absent from work more than three times a month as a result of her mental impairment and/or treatment. (AR 389.) As the ALJ observed, the record does not contain documents reflecting Dr. Valdes' treatment of Plaintiff. (*See* AR 30.) Accordingly, the ALJ did not err in finding that Dr. Valdes' assessment of marked limitations was conclusory and discounting Dr. Valdes' assessment on that basis. *See Thomas*, 278 F.3d at 957.

Plaintiff's other treating psychiatrist, Elaine Dresbach, M.D., completed two check the box questionnaires concerning Plaintiff's mental limitations. On October 10, 2013, Dr. Dresbach completed a form indicating that Plaintiff had extreme limitations – rendering her without any useful ability to function – in her ability to the following: understand and remember short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; be punctual, sustain an ordinary routine without special supervision; work in coordination with or in proximity to others; make simple work-related decisions; complete a normal workday without interruptions from psychological based symptoms; perform at a consistent pace; accept instructions and respond appropriately to criticism from supervisors, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and, *inter alia*, travel in unfamiliar places or use public transportation. (AR 399-401.) Dr. Dresbach stated that she based her assessment on Plaintiff's symptoms of anhedonia, decreased concentration, guilt, increased sleep, and,

*inter alia*, panic attacks. (AR 401.) Dr. Dresbach opined that Plaintiff would likely have four or more absences from work in an average month. (AR 400.)

On April 21, 2014, Dr. Dresbach completed a second form questionnaire. (AR 503.) She indicated that Plaintiff's diagnosis included Major Depressive Disorder and General Anxiety Disorder. (AR 503.) She opined that Plaintiff had extreme limitations in all aspects of understanding and memory, concentration and persistence, and social interaction, suggesting that Plaintiff's condition had worsened since her opinion six months earlier. (AR 503-04; *compare also id.* (opining that Plaintiff had extreme limitations in all aspects of understanding and memory, concentration and persistence, and social interaction) *with* AR 399-401 (opining that Plaintiff had marked, as opposed to extreme, limitations in some aspects of understanding and memory, concentration and persistence, and social interaction).)

Dr. Dresbach provided notes reflecting her treatment of Plaintiff between July 8, 2015 and November 12, 2015. (AR 402-09, 776-96.) These notes reflect that Plaintiff regularly reported experiencing crying spells, irritability, low energy, difficulty concentrating, and other symptoms. (*See*, *e.g.*, AR 776 (11/12/15 – concentration issues, crying spells, irritable, low energy), 779 (8/14/15 – crying spells, irritable, low energy), 781 (3/19/15 – crying spells), 784 (8/21/14 – sadness, irritability, fatigue, trouble concentrating, unexplained crying), 785 (6/9/14 – crying spells), 787 (2/3/14 – panic attacks with increased frequency, feels overwhelmed), 788 (11/15/13 – worry, fears, irritability, fatigue, panic attacks), 789 (10/10/13 – low energy, guilt severe, anxiety daily), 790 (9/24/13 – fears, worry, fatigue, insomnia, panic attacks), 791 (8/19/13 – low energy, guilt, decreased concentration), 794 (7/29/13 – low energy, guilt, crying spells), 794 (7/8/13 – crying, guilt, irritable).) The notes also indicate that Plaintiff often exhibited a depressed or anxious mood. (*See, e.g.*, AR 779 (8/14/15 – depressed mood), 780 (6/11/15 - anxious mood) 784 (8/21/14 – depressed/anxious mood), 785 (6/9/14 - anxious mood) 788 (11/15/13 – anxious mood), 789

(10/10/13 – anxious mood), 794 (7/29/13 – depressed mood), 791 (8/19/13 – depressed mood).) However, the notes also reveal that Plaintiff's thought process was consistently linear, she denied hallucinations or suicidal ideation, she exhibited appropriate insight and judgment as well as no delusions, and her mental status examinations were normal. (*See, e.g.*, AR 779 (8/14/15), 780 (6/11/15), 781 (3/19/15), 782 (1/22/15), 783 (10/7/14), 784 (8/21/14), 785 (6/9/14), 786 (5/15/14), 788 (11/15/13), 789 (10/10/13), 790 (9/24/13), 791 (8/19/13), 794 (7/29/13), 795 (7/8/13).) Dr. Dresbach consistently assessed Plaintiff with a GAF score of 60 or higher during their initial treatment sessions, reflecting mild and moderate symptoms. (*See, e.g.,* AR 781 (3/19/15 – GAF score of 65), 782 (1/22/15 – GAF score of 65), ) 783 (10/7/14 – GAF score of 65), 784 (8/21/14 – GAF score of 60), 785 (6/9/14 – GAF score of 60), 786 (5/15/14 – GAF score of 65), 788 (11/15/13 – GAF score of 65), 789 (10/10/13 – GAF score of 65), 790 (9/24/13 – GAF score of 70), 791 (8/19/13 – GAF score of 60), 794 (7/29/13 – GAF score of 60), 796 (7/8/13 – GAF score of 60).) However, after two years of regular treatment, Plaintiff's condition improved such that Dr. Dresbach began assessing Plaintiff with GAF scores of 70 or higher, indicating that Plaintiff's symptoms had become little more than transient and expectable reactions to psychosocial stressors. (*See, e.g.*, AR 777 (11/12/15 – GAF score of 75), 779 (8/14/15 – GAF score of 75), 780 (6/11/15 – GAF score of 70)); *see also* DSM-IV at 34. Accordingly, the ALJ did not err in finding that Dr. Dresbach's assessment of marked and extreme limitations in all areas of functioning was inconsistent with her treatment notes and discounting her opinion on that basis. *See Thomas*, 278 F.3d at 957.

### 2. Examining Psychiatrist

The medical evidence in the record also includes the report of Gregory M. Nicholson, M.D., the board certified psychiatrist who examined Plaintiff at the request of the Commissioner. Plaintiff reported to Dr. Nicholson on June 16, 2014 that she experiences auditory hallucinations and feels paranoid, despite denying hallucinations to her treating

psychiatrist at the time, Dr. Dresbach. (AR 508.) Plaintiff reported that she has friends who cook meals for her, but she is able to drive, handle bills and cash appropriately, and go out on her own. (AR 509.) Plaintiff was neatly groomed, made good eye contact and good interpersonal contact, and she was coherent and organized. (AR 509.) Dr. Nicholson described Plaintiff's mood as depressed and her affect tearful and dysphoric. (AR 510.) Nevertheless, Plaintiff was alert and oriented and followed the conversation well. (AR 510.) Plaintiff's fund of knowledge was grossly intact, but she was unable to spell the word 'world' correctly and could not perform serial threes. (AR 510.) Dr. Nicholson, like Dr. Dresbach, found that Plaintiff's insight and judgment were grossly intact. (AR 511.) Dr. Nicholson opined that he expected Plaintiff's psychiatric condition to improve in the next twelve months with active treatment. (AR 511.) Dr. Nicholson further opined that Plaintiff is able to understand, remember, and carry out instructions – both simple and complex – and had only mild limitations in her ability to interact with others, maintain concentration, attention, persistence, and pace, maintain regular attendance in the work place, and perform work activities without additional supervision. (AR 511-12.)

### 3. Reviewing Psychologist and Psychiatrist

Finally, the reviewing psychologist, Nadine J. Genece, opined on February 11, 2014, several months before Dr. Nicholson's examination, that Plaintiff's ability to perform a range of basic work activities, including understanding, carrying out, and remembering simple instructions, maintaining attention and concentration for extended periods, and completing a normal workday and workweek without interruptions from psychologically based symptoms, was "not significantly limited" (AR 110-11) and that Plaintiff had no limitations in either social interaction or adaptation (AR 111). Accordingly, Dr. Genece found that Plaintiff's mental impairment was nonsevere. (*See* AR 121.) On June 26, 2014, psychiatrist R. Paxton conducted a second review of Plaintiff's medical records and

recommended affirming Dr. Genece's February 11, 2014 opinion that Plaintiff's mental impairment was non-severe. (*See id.*)

**B. Conclusion**

The medical evidence in the record clearly establishes that, although Plaintiff suffers from a mood disorder, her impairment does not have a more than minimal effect on her ability to perform basic work activities. *See Webb*, 433 F.3d at 686. The ALJ concluded that the only medical opinions suggesting otherwise were unreliable because they were conclusory and either inconsistent with, or unaccompanied by, treatment notes from the opining doctor. After a careful review of the medical record, the Court has found no error in the ALJ's rationale and determined that her reasons for discounting the opinions of Plaintiff's treating psychiatrists were supported by substantial evidence. Accordingly, although step two is a *de minimis* screening device, *Webb*, 433 F.3d at 687, the ALJ did not err in finding that Plaintiff's mood disorder was non-severe at this step in the analysis. For these reasons, the ALJ's decision is affirmed.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

## CONCLUSION

The Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY

DATE: December 1, 2018

_Karen L. Stevenson_
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE